UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------x

OSCAR FRASER,

                      Plaintiff,

   -against-

UNITED STATES OF AMERICA,

                      Defendant.

------------------------------------------------x

MEMORANDUM AND ORDER
06-CV-4345 (ILG)

GLASSER, United States Senior District Judge:

## INTRODUCTION

Plaintiff Oscar Fraser ("Fraser" or "Plaintiff") filed this action against the United States of America ("the Government") seeking damages for personal injuries under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680 (2006).[1] Fraser, a construction worker, alleges that he sustained injuries when a concrete capstone that was being hoisted by a forklift fell from a height of approximately ten to eleven feet, causing the makeshift scaffold upon which he was standing to collapse. See Compl. ¶ 24. The Government now moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"). For the reasons set forth below, the Court grants the Government's motion.

---

[1] The Court so-ordered the Stipulation and Order of Partial Dismissal between Fraser and the Government as to Fraser's second, third, and fourth causes of action against the Government, dismissing without prejudice the causes of action brought pursuant to New York Labor Law §§ 240(1), 241(6), and 200(1), and the Federal Occupational Safety and Health Regulations. See Fraser v. United States, No. 06 CV 4345, Docket No. 18 (E.D.N.Y. Apr. 30, 2007) (Glasser, J.).

1

**FACTS**

The Government, by and through the Federal Bureau of Prisons, owns the premises and buildings located at 63 Flushing Avenue, Building No. 4 in the Brooklyn Navy Yard in Brooklyn, New York (the "Premises"). See Compl. ¶¶ 9, 11. On March 28, 2005, the United States, through the Federal Bureau of Prisons, awarded a contract to Cooper Construction Inc. ("Cooper") for the purpose of renovating the Premises.[2] See id. ¶¶ 13-14; Declaration of Assistant United States Attorney Margot Schoenborn ("Schoenborn Decl."), dated February 15, 2007, Ex. A.

**A.     The Accident**

From approximately July 2005, through January 20, 2006, Fraser was employed as a mason and carpenter on the Premises. See Affidavit of Plaintiff in Opposition to the Defendant's Motion to Dismiss ("Pl. Aff."), dated April 20, 2007, ¶ 3. On or about January 20, 2006, Fraser sustained injuries when a concrete capstone that was being hoisted by a forklift fell from a height of approximately ten to eleven feet, causing the makeshift scaffold upon which Fraser was standing to collapse. See Compl. ¶ 24; Pl. Aff. ¶ 9. Fraser sustained several injuries for which he underwent surgery and physical therapy. See Pl. Aff. ¶ 10. Fraser claims that, prior to January 20, 2006, he complained to "Mike" the "foreman of the construction project" that the "makeshift scaffold was too

---

[2] The Complaint also alleges that the Government engaged an additional general contractor and construction manager, STV Incorporated ("STV"). See id. ¶¶ 17-18. The Government has submitted the Declaration of Robert J. Kruskie, the Contracting Officer for the Department of Justice, Federal Bureau of Prisons who is responsible for all architectural and engineering service acquisitions in the Northeast, in support of the fact that STV did not serve as either a general contractor or a construction manager for the renovation of the Premises. See Declaration of Robert J. Kruskie ("Kruskie Decl."), dated February 13, 2007, ¶¶ 1-2. STV is an architectural and engineering firm that was retained by the Government to create specifications and drawings for the renovation of the Premises, and it completed such work prior to the commencement of any work on the Premises. See id. ¶ 3.

narrow and not suitable for the work [Fraser] did with respect to the installation of the capstones and the construction project generally."[3]  Pl. Aff. ¶¶ 6,13.

### B. The Complaint

Plaintiff alleges that the injuries he suffered as a result of the fall were "due to the negligence, carelessness and recklessness of the defendant, its Bureau of Prisons, agents, servants and/or employees" in failing to, amongst other things, properly maintain, construct, grade, level or pave the ground or surface upon which the forklift was operating, thus allowing it to be operated on an uneven surface which caused the forklift to "wobble, shake and dislodge the capstone."  Compl. ¶ 27.  He also alleges that the Government was negligent in failing to properly erect the scaffolding upon which Fraser was standing at the time he fell, and in failing to provide proper safety equipment.  See Compl. ¶ 27.  Fraser complains that a forklift was "not the proper equipment for lifting a capstone," and that the makeshift scaffolding was too narrow. See Pl. Aff. ¶ 11.  Additionally, Fraser claims that the pavement upon which the forklift was operated, which was located in the rear of the warehouse that was being renovated, was broken, not

part of the construction project, and that this condition preexisted plaintiff's employment at the Premises in July 2005.  See Pl. Aff. ¶¶ 11, 15-16.

### C. The Contract

Plaintiff has challenged the authenticity of the contract attached within Exhibit A to the Schoenborn Declaration (the "Contract").  See Pl. Br. at 3.  Exhibit A consists of

---

[3]  "Mike" refers to Michael Mauplinus, Cooper's construction supervisor.  Nicholson attests that he "regularly interfaced" with Mauplinus when he performed his inspections.  Nicholson Decl. ¶ 6.

the Solicitation, Offer and Award (Standard Form 1442), dated June 2, 2005, between the Government and Cooper. See Schoenborn Decl. ¶ 1, Ex. A. The documents in Exhibit A include the Standard Form 1442, the Standard Form 24 (the Bid Bond), a Power of Attorney form, a letter from the Contracting Officer to Cooper with respect to its bid, and a form marked "IFB 21451-0035." IFB 21451-0035 consists of three sections containing provisions that allocate and delegate specific responsibilities between the Government and Cooper.

Fraser argues that, because a box in paragraph 29 on the Standard Form 1442 is checked, that means that the Standard Form 1442, which is three pages in length, constituted the entirety of the contract between the Government and Cooper. Paragraph 29 states, "Award (Contractor is not required to sign this document) Your offer on this solicitation, is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) the contract award. No further contractual document is necessary." Schoenborn Decl., Ex. A, Standard Form 1442 ¶ 29. (emphasis added). Fraser also contends that the silence of Robert J. Kruskie, who signed the Standard Form 1442 as the Contracting Officer, as to the authenticity of Sections I, II, and III of IFB 21451-0035 is evidence that IFB 21451-0035 and the attachments referenced therein were not part of the Cooper Contract.

The Government defends the authenticity of the Contract. The Government submitted a declaration from Patrick J. Nicholson, the Contracting Officer's Technical Representative ("COTR"), that states that the contract attached to the Schoenborn

Declaration was indeed the Cooper Contract which he abided by in overseeing the construction.  See Reply Declaration in Support of Motion to Dismiss ("Nicholson Decl."), dated May 2, 2007, ¶ 3.  The Government further argues that Sections I, II, and III of IFB 21451-0035 were, in fact, incorporated by the Standard Form 1442 pursuant to paragraphs 11 and 14 of the amendments to the Standard Form 1442.  Paragraph 11 indicates that the Standard Form 1442 is amended by the items set forth in paragraph 14.  Schoenborn Decl., Ex. A, Standard Form 1442 at 2 ¶ 11.  Paragraph 14 lists certain amendments to the Specifications attached to IFB 21451-0035.  See id. ¶ 14.

Sections I, II, and III of IFB 21451-0035 set forth the division of responsibility between the Government and Cooper.  By reference to multiple clauses under the Federal Acquisition Regulations System (48 C.F.R. Ch. 1), Section III incorporated several delegations of responsibility to Cooper with regards to the safety and upkeep of the Premises.  See Schoenborn Decl., Ex. A, IFB 21451-0035 § III.1.  Specifically, it incorporated 48 C.F.R. 52.236-7, which delegates to the contractor the responsibilities of "obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work."  The same regulation also obligates the contractor to assume liability for "all damages to persons or property that occur as a result of the Contractor's fault or negligence."  Id.  With regards to the safety of the Premises, the Contract incorporated 48 C.F.R. 52.236-13, which requires the contractor to "provide and maintain work environments and procedures which will . . . safeguard the public and Government personnel, property, materials, supplies and equipment exposed to Contractor operations and activities" as well as take corrective action upon notice from the

Government for "any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel . . . ." Aside from the incorporated regulations, Section I specifically required the contractor to "[t]ake all reasonable steps and precautions to prevent accidents and preserve the life and health of the contractor and Government personnel performing or in anyway coming in contact with the performance of this contract . . . ." Schoenborn Decl., Ex. A, IFB 21451-0035 § I.14(c).

Section III also reserved to the Government the right to inspect the contractor's work and provide general direction. It states that the COTR would be responsible for "inspecting and accepting the supplies or services provided hereunder in accordance with the terms and conditions of this contract; providing direction to the contractor which clarifies the contract effort, fills in details or otherwise serves to accomplish the contractual Scope of Work; [and] evaluating performance . . . ." Id. § III.7(b). Section III identified Patrick J. Nicholson of the Metropolitan Correctional Center of the Department of Justice, Federal Bureau of Prisons, as the COTR for the renovations on the Premises. It also specifically stated that Nicholson did "not have the authority to alter the contractor's obligations under the contract, and/or modify any of the expressed terms, conditions, specifications, or cost of the agreement." Id. § III.7(c). Indeed, Nicholson's declaration confirms that as the COTR for the Cooper Contract, he was "responsible for overseeing" the technical aspects of construction to ensure that the renovations were completed consistent with the contract's Specifications and Drawings, as well as any applicable safety regulations. Nicholson Decl. ¶¶ 2, 3, 6.

## **DISCUSSION**

### A. Standard of Review

Rule 12(b)(1) allows for the dismissal of a claim when a federal court has a "lack of jurisdiction over the subject matter." The plaintiff bears the burden of proving by a preponderance of the evidence that the court retains jurisdiction. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."); Arndt v. UBS AG, 342 F.Supp.2d 132, 136 (E.D.N.Y. 2004) (Glasser, J.) (same). In considering a motion to dismiss for lack of subject matter jurisdiction, the Court assumes as true the factual allegations in the complaint, and resolves any factual ambiguities in favor of the plaintiff.[4] See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint."); Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000) ("When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."). However, the Court may not draw any jurisdictional inferences in favor of the plaintiff. See Drakos, 140 F.3d at 131 ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (citing Norton v. Larney, 266 U.S. 511, 515

---

[4] The Court will consider the affidavits and exhibits submitted by the Government in addition to the facts as alleged in the complaint to resolve the jurisdictional question. See Makarova, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."); Shivcharan v. United States, No. 04 CV 1296 (SJ), 2005 WL 408046, at *1 (E.D.N.Y. Feb. 15, 2005) ("A court may consider affidavits and other material beyond the pleadings to resolve jurisdictional questions under Rule 12(b)(1).").

(1925))); Arndt, 342 F.Supp.2d at 136-37 ("While the Court is constrained to accept the material factual allegations in the Amended Complaint as true for purposes of this motion, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." (quotation omitted)). Rather, the plaintiff must prove the statutory requirements under the FTCA by a preponderance of the evidence. See Narvaez v. United States, 05 CV 2240 (SLT)(RML), 2007 WL 174141, at *2 (E.D.N.Y. Jan. 18, 2007) ("The burden is on the plaintiff to both plead and prove compliance with the Federal Tort Claims Act statutory requirements." (citing In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987))). "Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States." Moreno v. United States, 965 F.Supp. 521, 524 (S.D.N.Y. 1997).

### B. Authenticity of the Contract

Rule 901 of the Federal Rules of Evidence provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901. Pursuant to Rule 901, the Government offered a declaration from Nicholson as the COTR of the Cooper construction project to authenticate Exhibit A to the Schoenborn Declaration as the Contract. See Nicholson Decl. ¶ 3. Thus, this Court finds that Rule 901 has been satisfied, and, for the reasons discussed below, that the Standard Form 1442, Sections I, II, and III of IFB 21451-0035, and the Attachments

8

thereto constitute the Contract.[5]

The fact that the Contract encompasses Sections I, II, and III of IFB 21451-0035 is plain from the instructions contained in the Standard Form 1442. Paragraph 9A of the amendments to Standard Form 1442 indicates that amendments were made to "Solicitation No. IFB 21451-0035," and further refers the reader to paragraph 11. Schoenborn Decl., Ex. A, Standard Form 1442 at 2 ¶ 9A. Paragraph 11 further indicates that amendments to the Solicitation were set forth in paragraph 14. See id. ¶ 11. Paragraph 14 clearly states, "This Amendment 1 to IFB 21451-0035 incorporates the following changes . . . ." Id. ¶ 14. Thus, the amendment indisputably indicates that the Contract includes the sections within IFB 21451-0035. Additionally, while paragraph 14 also incorporates certain changes to Attachment II, the Specifications, it also provides that "[a]ll other terms and conditions remain unchanged." Id. Therefore, Sections I, II, and III of IFB 21451-0035, which set out the responsibilities and obligations of Cooper to the Government, the employees, and the Premises, are part of the Cooper Contract. Fraser's attempt to dilute the Contract to the stand-alone three page award document absent any delegations of responsibility or the terms and scope of the construction is disingenuous at best.[6]

---

[5] At the hearing on this motion to dismiss, Fraser argued that, pursuant to Rule 602 of the Federal Rules of Evidence, Nicholson could not authenticate the document because he lacked personal knowledge of the contents of the Contract, and that this Court should allow Fraser to depose Kruskie, the Contracting Officer who signed the Standard Form 1442, to determine whether the Contract included IFB 21451-0035 and the attachments. The Court finds that Nicholson possessed knowledge sufficient to authenticate the Contract because his job functions included ensuring that the work on the premises was completed consistent with the attachments to IFB 21451-0035, and that he, therefore, would have been familiar with the Contract.

[6] Fraser also contends that the Contract was not incorporated by the Standard Form 1442 because the form indicates that the project would be constructed "in accordance with the Specifications (Attachment II) and Drawings (Attachment III) located in IFB 21451-0035," and that such Drawings were missing from the Contract supplied by the Government in its moving papers. Schoenborn Decl., Ex. A,

## C. Subject Matter Jurisdiction Under the FTCA

The United States is generally immune from suit "save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (internal citations omitted). Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. Mitchell, 445 U.S. 535, 538 (1980).

The FTCA creates a limited waiver of sovereign immunity for claims against the United States. This waiver allows the Government to be held liable "to the same extent as a private person" for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b); Leone v. United States, 910 F.2d 46, 48 (2d Cir. 1990).

The FTCA defines "[e]mployee of the government" to include "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity . . . ." 28 U.S.C. § 2671. The FTCA further defines "federal agency" to include "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations

---

Standard Form 1442 ¶ 10. In response, the Government provided the missing Drawings, however, this Court has not been provided the missing Specifications. See Nicholson Decl. ¶ 4, Ex. C.

    According to the Nicholson Declaration, the Specifications are immaterial to this Decision. Nicholson declared that he was "responsible for overseeing the technical aspects of construction and renovation," and that his duties included ensuring that the construction and renovations were "completed consistent with . . . the contract['s] specifications and drawings." Id. ¶ 2 (emphasis added). As detailed below, provisions of the Contract are relevant to this motion only insofar as they aid the Court in determining whether the Government controlled the detailed physical performance of Cooper or whether the Government supervised the day-to-day operations of Cooper. Therefore, the actual technical details of construction contained in the Specifications are irrelevant.

primarily acting as instrumentalities or agencies of the United States," but specifically excludes "any contractor with the United States." Id. Thus, it is well-settled that the federal government may not be held liable for the negligence of independent contractors. See United States v. Orleans, 425 U.S. 807, 814 (1976) ("Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver."); Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997) ("[S]overeign immunity precludes suits against the United States for injuries cause by its independent contractors."). Therefore, subject matter jurisdiction turns on whether Cooper was a federal employee or an independent contractor.

### D. Independent Contractor Status

Whether an entity is a federal employee or an independent contractor is a question of federal law. Leone, 910 F.2d at 49. The Supreme Court wrote in Logue v. United States, 412 U.S. 521, 527 (1973), that the "distinction between the servant or agent relationship and that of independent contractor turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." It further held that where the Government cannot "control the detailed physical performance of the contractor," it cannot be held liable for the negligent acts of the contractor's employees. Id. at 528.

Courts look to the terms of the contract to determine whether the Government controlled the detailed physical performance of the contractor or whether the Government supervised the day-to-day operations of the contractor. See Shivcharan, 2005 WL 408046, at *2 (explaining that question of whether contractor was

independent is "resolved by looking at the language of the contract between the Government and the contracting entity[] in order to determine whether the contract provides for detailed day-to-day supervision of the contractor's physical performance, or rather grants the contractor autonomy in the performance of his work."); Abrams-Fogliani v. United States, 952 F. Supp. 143, 145 (E.D.N.Y. 1996) ("The critical factor in distinguishing an employee of the government from an independent contractor is whether the government retained the authority to control the detailed physical performance of the work or whether the worker's day-to-day operations in fact were supervised by the federal government.").

The Cooper Contract clearly delegated control over the detailed physical performance of the construction as well as the day-to-day operations to Cooper. The Contract made Cooper "responsible for all materials delivered and work performed until completion and acceptance of the entire work . . . ." Schoenborn Decl., Ex. A, IFB 21451-0035 § III.1 (incorporating 48 C.F.R. 52.236-7); see Carter v. United States, No. 96 Civ. 9139 (MBM), 1998 WL 744009, at *2-3 (S.D.N.Y. Oct. 26, 1998) (granting motion to dismiss where contract delegated responsibility for renovation and maintenance ). The Contract further mandated that Cooper not only maintain the physical property upon which it was working, but also protect the employees. See Schoenborn Decl., Ex. A, IFB 21451-0035 §§ III.1 (incorporating 48 C.F.R. 52.236-13) and I.14(c) (requiring Cooper to "provide and maintain work environments and procedures which will . . . safeguard the public and Government personnel, property, materials, supplies and equipment exposed to Contractor operations and activities," and "[t]ake all reasonable steps and precautions to prevent accidents and preserve the life and health of contractor and

Government personnel performing or in anyway coming in contact with the performance of this contract . . . ."). Moreover, Cooper assumed all liability for any damage as a result of its fault or negligence, and was responsible for complying with any "municipal laws, codes, and regulations applicable to the performance of the work." Id. § III.1 (incorporating 48 C.F.R. 52.236-7).

Courts consider the allocation of such safeguards to, and the assumption of liability by, the contractor as a general indication that the contractor was in fact independent and not acting as an agent of the Government. See Diaz v. United States Postal Serv., No. 02 Civ. 8892 (NRB), 2003 WL 21767530, at *2 (S.D.N.Y. July 31, 2003) (granting motion to dismiss where there was "no doubt that . . . [contractor] was acting as an independent contractor" because it "contracted to do all of the construction work and indemnified the United States, accepting all of the liability for injuries that resulted from the work."); see also Moreno, 965 F.Supp. at 525 (finding contractor not Government agent where contractor "assumed full responsibility for ensuring that the Building was in compliance with applicable state and federal regulations.").

The fact that the Government retained the right to inspect Cooper's work via its employee, the COTR, does not negate the Government's immunity. The Government is immune to liability even where it retains the right to inspect a contractor's work or its compliance with regulations. See Leone, 910 F.2d 46, 50 (2d Cir. 1990) (explaining that where the Government "generally [acts] as an overseer," no liability may ensue); O'Neill v. United States, 927 F.Supp. 599, 606-07 (E.D.N.Y. 1996) ("[N]either the retention of the right to inspect the contractor's work, nor the power to control a contractor's compliance with the contract's specifications, is sufficient to convert the contractor's

status from an independent contractor to an agent of the Government . . . .").

Fraser's own affidavit attests to the fact that the COTR's oversight was general and did not impinge upon the contractor's day-to-day autonomy. See Pl. Aff. ¶¶ 7-8 (describing COTR's general oversight as issuing instructions to the construction manager with respect to "the performance of the construction project," and issuing "safety instructions" to the workers such as "to put on their hat or helmet, to fasten their belts while on [sic] power operated lift, to be careful on the scaffold, [and] to operate the forklift carefully or slowly."). Therefore, the supervision of the COTR did not convert Cooper's status from independent contractor to one of agent. See Lipka v. United States, 369 F.2d 288, 291 (2d Cir. 1966) ("Reservation of the power to control a contractor's compliance with the contract's specifications does not make the contractor an employee."); Fisko v. United States, 395 F.Supp.2d 57, 63 (S.D.N.Y. 2005) (finding no agency relationship where the "Government did not exercise control over the detailed physical performance or supervise the day-to-day activities of [the contractor], but reserved the right to inspect the performance to ensure compliance with the terms of the contract.").

### E.     Discretionary Function Exception

The Government may neither be held liable for its selection of Cooper as the contractor, nor for the COTR's general supervision of Cooper because such roles constitute a discretionary function. See Shivcharan, 2005 WL 408046, at *2 ("[T]he United States cannot be held liable for the selection and supervision of independent contractors, because the selection and supervision of contractors is a discretionary function."); Moreno, 965 F.Supp. at 526 ("[I]t is well established that the United States'

decision to contract with independent companies to ensure maintenance of premises is a discretionary function, insulated from liability." (citation omitted)). The FTCA shields the Government from liability for any "claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Therefore, the Court also lacks subject matter jurisdiction over this action because Fraser's claims are barred by the discretionary function exception.

### F. Non-Delegable Duty

Fraser argues in the alternative that, even assuming that the grounds upon which the forklift was operated were outside the scope of the Contract awarded to Cooper, and therefore, outside its control, the Government is still liable because "under New York law, the United States, as the owner of the building in question, was under a duty of reasonable care under the circumstances whereby foreseeability shall be a measure of liability." Pl. Br. at 5-6 (quotation omitted). In essence, Fraser argues that, because "under New York law, a landowner who holds property open to the public has a nondelegable duty to ensure the premises are safe," the FTCA should recognize such claims against the Government. Roditis, 122 F.3d at 111.

In the first instance, the Drawings of the construction site indicate that the "scope of construction included renovations to the entirety of the warehouse Building #4 at the Brooklyn Navy Yard," and therefore the grounds upon which the forklift was operated would have been within the scope of the Contract. Nicholson Decl. ¶ 5. By Fraser's own admission, the forklift was operated on the grounds "located in the rear of the

15

warehouse and was approximately 8-10 feet adjacent the rear wall of the warehouse . . . ." Pl. Aff. ¶ 16. As the independent contractor, Cooper, and not the Government, is nonetheless liable for any injuries sustained on these grounds even if they are technically outside the parameters of the physical warehouse because "[t]he span of a construction site is not limited to the precise area where the construction is taking place; it includes adjacent areas as well." Diaz, 2003 WL 21767530, at *3 (quoting Roditis, 122 F.3d at 110).

Second, even if any defects in the concrete preexisted the Cooper Contract, they were in plain view according to Fraser, and thus, it was Cooper's responsibility under the Contract to repair them. See Loew v. United States Postal Serv., No. 03 CV 5244, slip op. at 15 (E.D.N.Y. Feb. 9, 2007) (Glasser, J.) ("[The contractor] was indisputably charged with the maintenance and safety of the premises at the time of [plaintiff]'s accident . . . . The alleged defect was in plain view, and it was therefore [the contractor]'s responsibility to repair it, regardless of whether or not the government was negligent in originally installing the steps."). Here, where the Contract clearly charged Cooper with the responsibility of maintaining the work environments in a manner that would "safeguard the public and Government personnel, property, materials, supplies and equipment exposed to Contractor operations and activities," there can be no question that the liability for failure to maintain the grounds upon which the forklift operated belonged solely to Cooper as a matter of contract. Schoenborn Decl., Ex. A, IFB 21451-0035 § I.14(c).

Moreover, courts are legion in holding that the FTCA does not waive sovereign immunity for the non-delegable duties of landowners under state law. See Roditis, 122

F.3d at 111 ("[A]s the Supreme Court has explained, in adopting the independent contractor exception to liability, Congress did not simultaneously adopt the exceptions to that doctrine. Thus, any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors." (citing Logue, 412 U.S. at 528)). The United States does not have a duty "to ensure the safety of government-owned property that survive[s] the delegation to the contractor." Diaz, 2003 WL 21767530, at *2; see also Burke v. United States, No. 96 Civ. 2470, 1996 WL 671151, at *2 n.4 (finding that even though the alleged faulty condition may have been "outside the parameters of the duties delegated" to the contractor, the Government could not be held liable as a landowner under the FTCA because there is no subject matter jurisdiction for claims against the Government for "non-delegable duties of landowners under state law . . . . The Tort Claims Act does not waive sovereign immunity as to such claims.").

Further, if state law non-delegable duties were imposed on landowners, it "would result . . . in a form of strict liability against the United States for injuries caused by its independent contractors," and the FTCA "does not extend to liability without fault." Roditis, 122 F.3d at 111-112 (quotation omitted). Where the Government "has delegated to an independent contractor the responsibility for maintaining its property, imposing a non-delegable duty of safety on the Government would essentially impose strict liability on the Government, disregarding the central inquiry mandated by the FTCA: whether any Government employee is guilty of a negligent act or omission." Moreno, 965 F.Supp. at 526 (quotation omitted).

Since the Government lacks subject jurisdiction over Fraser's FTCA claims, the

17

complaint must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS the Government's motion to dismiss for lack of subject matter jurisdiction. The Clerk of the Court is hereby directed to close the above-captioned action.

SO ORDERED.

Dated: Brooklyn, New York
June 4, 2007

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Plaintiff
Vincent I. Eke-Nweke, Esq.

Law Office of Vincent I. Eke-Nweke, P.C.
498 Atlantic Avenue
Brooklyn, New York 11217

Counsel for the Government
Margot P. Schoenborn, Esq.

Assistant United States Attorney for the Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201